UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Case: 2:09-cv-11807
Judge: Borman, Paul D
MJ: Majzoub, Mona K
Filed: 05-11-2009 At 02:21 PM
IFP SCOTT V. BURRESS ET AL (JTC)

DAVID J. SCOTT
    Plaintiff,

-vs-

DANIEL BURRESS, BRIAN
LAVAN, JAMES PASENSKI,
Thomas CREMONTE, DENNIS
BOLLING, DAVID BERGSMA,
CHRISTOPHER CORRIVEAU,
FRANK DELVERO, ANGELA
DELVERO, ERIC WALTERS,
BRENDA EVANS, JAMES,
HUGHES, PAMELA MAAS,
MARK GATESMAN, UK
PAROLE BOARD MEMBER,
SHIRLEY SCOTT, VERN SCOTT
SENIOR, VERN SCOTT JUNIOR,
MAUREEN LOTVENAS, William
McCRERIE, TIM BLACKBURN,
JULI BLACKBURN, JOYCE
DRAGANCHUK, TERESA BRENNAN,
BRIAN BROWN, WILLIAM
COLLETTE, TODD REETZ,
JOHN SMITH AND BARB SCOTT,
        Defendants.

## CIVIL COMPLAINT
### With Jury Demand

This is a civil cause of action filed by David Scott in propria persona under the Racketeering Influence and Corrupt Organization Act (RICCO) for acts performed as an on-going criminal organization alleging obstruction of justice, extortion, racketeering retaliation for seeking legal redress and conspiring to commit same.

Jurisdiction

1. This court has jurisdiction for this matter pursuant to 18 USC 1961-1968. Plaintiff further invokes the supplemental jurisdiction of the court for any state law claims asserted by the Plaintiff.

Parties

2. Plaintiff incorporates paragraph 1 above.

3. At all times pertinent to this action, Plaintiff was a private citizen with his residence in County of Livingston, State of Michigan.

4. At all times pertinent to this Complaint David Burgess (retired), Teresa

-2-

Brennan, Joyce Draganchuk, william Collette, and Peter theile were Michigan County Judges; Defendants Thomas Cremonte, Dennis Bolling, Christopher Cornreas and Doud Berg are were members of Michigan Police; Defendant UK Parole Board member was a member of Michigan correctional system; Defendants Eric Welter, Brenda Evens and James Hughes were employed with Michigan courts; Defendants Brian Lavan and mark Gatesman were Michigan attorneys at law; Defendants William McCinstra, Frank Deluca, Angela Dotson and Pamela maas were Michigan prosecutors; Defendants Shirl, Scott, Vera Scott Senior, Vera Scott Junior, Maureen Latvenas, Tim Blackburn, Julie Blackburn; Todd Peeter and Sherman Burbason were prosecutors with their residence in County of Livingson.

Genral Allegations

     5. Plaintiff incorporates paragraphs 1 through 4 above

     6. Plaintiff owned an exterior building restoration business that he operates out of his home situated in the city of Brighton, state of Michigan.

     7. In or about May 1979 Defendant Lavan vowed to take over ownership of

Plaintiff's home.

8. Defendant Lovan meant and was understood to mean that he coveted Plaintiff's home and intended against Plaintiff's will by unlawful means to acquire the home and force Plaintiff to vacate the home.

9. During that time period, Defendant Lovan served on the Brighton City Board of Review consisting of a three member panel that functioned as the first level of review of property tax disputes by aggrieved parties owning real property within the city of Brighton.

10. From that insider standpoint, Defendant Lovan, each year from 1980 through 1983, caused the over assessment of the value of Plaintiff's home by falsifying city tax records with the intent of forcing a tax sale and corruptly acquiring the home through such sale.

11. Plaintiff sought and eventually obtained relief through the Michigan Tax Tribunal.

12. Shortly thereafter, Defendant Lovan, in conjunction with Defendant McCririe, instituted a forfeiture action

4.

against Plantiffs

13. The action was brought in bad faith with the intent once again to corruptly acquire plantiffs home.

14. Plaintiff resolved the forfeiture action upon paying off the principle balance owing on a land contract by which Plantiff was purchasing the home.

15. On or about March 9, 1984, Plantiff was charged in Livingston County, on complaints sworn out by Defendant Bollings in four seperate files with conspiracy to deliver controlled substance less then 50 grams.

16. The charges were and are fake.

17. They were based on statements submitted by Defendants Reete and Smith that Plaintiff supplied Reete and smith illegal drugs that they in turn sold to Defendant Bollings.

18. Defendants Lavon and Bollings, are God wills charge Plaintiff.

18A Reete and Smith were represented by Defendant Lavon.

19. Defendants Reete and Smith incriminated Plaintiff in exchange for dismissal of the delivery charges against them.

20. Defendants Reete and Smith were set up by Lavan.

21. The charges brought against Plaintiff to frame him, were orchestrated by Defendant Lavan once again, to corruptly acquire Plaintiff's home.

22. In conjunction with Defendant Lavan, the Livingston County prosecutors office under Defendant Frank Delvero proposed dismissal of the charges in exchange for Plaintiff relinquishing ownership of his home to Delvero.

23. In a deal between Defendants Delvero and Lavan, the home was to go to Lavan.

24. Plaintiff never turned over ownership of his home to Defendant DeVero.

25. The charges against Plaintiff remained pending through 1984, 1985 and 1986.

26. Meanwhile, in or about May 1986,

Defendant Loven began publicly accusing Plaintiff of intending to murder him and continues to make those accusations to this day.

27. The accusations were and are utterly false, malicious and slanderous.

28. Defendant Loven lacks probable cause whatsoever to believe Plaintiff intends, ~~or ever intended~~ to cause him physical harm.

29. The accusations were and are made to expose Plaintiff to undue public contempt, disdain and hatred.

30. In or about May 1986 Defendant Burress was appointed by the Michigan Governor to the Livingston Circuit Court bench at which time he became presiding Judge over Plaintiff's criminal case.

31. Seeking election to that position, Judge Burress instantaneously instituted a campaign against Livingston County District Court Judge Michael Merritt.

32. To gain an unfair

-7-

advantage in that campaign, Judge Burress orchestrated a false criminal investigation against Merritt and others politically associated with Merritt.

33. At or about that same time, Defendant Scott Senior was heard falsely accusing Plaintiff of committing acts of public corruption including claiming to have witnessed Plaintiff bribe a Livingston County circuit court judge.

34. In connection with the investigation orchestrated by Judge Burress against Judge Merritt, the Livingston County Prosecutor's office under Defendant Delvero and in conjunction with Judge Burress and Defendants Cremonte and Bergstrom, sought to no avail to coerce Plaintiff into falsely incriminating Judge Merritt and others associated with Merritt.

35. Defendants Lovan, Delvero, Cremonte and Bergstrom were and are close socially and politically to Judge Burress.

36. Having refused to provide

8

those false incriminators, Plaintiff became targeted by Defendant Lotvenor who related to Judge Burns.

37. During the months of May through August 1986, Defendant Lotvenor periodically appeared at Plaintiff's home.

38. Lotvenor was aware of a trip to Chicago to see an attorney that Plaintiff made during that period of time.

39. In late August 1986, Defendant Lotvenor was caught planting narcotics at Plaintiff's home to frame him.

40. Lotvenor confessed to working under the direction of Defendants Frank DeLeon, Evangate and Bergana to frame the Plaintiff.

41. Lotvenor sought to frame the Plaintiff in retaliation for Plaintiff refusing to falsely incriminat Judge Merritt.

42. On or about September 1, 1986, Plaintiff made a complaint about the Lotvenor affair to the United States Attorney's Office.

43. Persons named in that
complaint included Defendants Frank
Delvero, Cremarte and Bergsma.

44. In reaction to Plaintiff's
complaint to the United States Attorney's
office about the Lotrenes affair as
described above; additional charges for
conspiracy to deliver controlled substance
on complaints sworn out by Defendant
Cremarte were brought against Plaintiff
on or about October 9, 1986.

45. The charges were and are
false and were brought against Plaintiff
once again to frame him.

46 In conjunction with those
charges, Defendants Cremarte,
Bergsma, Bolhng and others conducted
a warrantless non-consensual search
of Plaintiff's home seizing and
failing to return a number of items
belong to Plaintiff and his girlfriend
including jewerly, money and legal
papers.

47 None of the items
seized were instrument of crime
nor was it reasonably believed that

same was connected to the commission of any crime.

48. In the course of conducting the illegal search and seizure, Defendant Cremonte, without provocation, authority, or cause, evicted from Plaintiff's home an individual lawfully renting a room from Plaintiff.

49. Through acts of harassment, hostility, and undue aggression, Defendants Cremonte, Bolling, Bessmc, Lavan and others destroyed Plaintiff's livelihood leaving him, among other things, unable to pay a defense attorney, by intimidating business associates of Plaintiff into ceasing and desisting further business dealings with Plaintiff and otherwise disassociating themselves from Plaintiff.

50. During a proceeding December 5, 1986 Judge Burress inexpliably revealed having knowledge of Plaintiff's contact with the aforementioned Chicago attorney.

51. Based on his personal and familial relationship with Lavan and Lotvencs, Plaintiff sought to

no avail the recusal of Judge Burress from his criminal case.

52. Judge Burress vowed to treat Plaintiff severely more harsh if found guilty after a jury trial.

53. Plaintiff entered into a plea of guilty before Judge Burress on or about January 20, 1987.

54. [illegible] the ground of innocence and to no avail, Plaintiff sought to withdraw his plea prior to sentencing.

55. On or about March 2, 1987 Judge Burress sentenced Plaintiff to a prison term of 7 to 20 years.

56. On his appeal of right from the judgment of Conviction and sentence rendered against him by Judge Burress, Plaintiff sought, among other issues, a remand for an evidentiary hearing to re-new Motion to disqualify Judge Burress.

57. To perfect that issue on appeal, Plaintiff inquired by written letter of Judge Burress disclosure as to the source of his knowledge

-12-

about the chicago attorney.

58. That information was required for purposes of showing personal bias by establishing involvement on the part of Judge Burress with Defendant Latimer in her aforementioned attempt to plant narcotics at Plaintiff's home to frame him.

59. Judge Burress reacted but never responded to Plaintiff's inquiry as to his knowledge about the chicago ~~attorney~~.

60. Judge Burress reacted initially by immediately establishing a sua sponte blanket disqualification from hearing all further matters pertaining to the Plaintiff.

61. The ~~Blanket disqualification led~~ to the state Court Administrative office (SCAO) assignment of Ingham County Circuit Court Judge William Collette.

62. Judge Collette was assigned to hear various actions filed by Plaintiff in the Livingston County circuit court and pending at that time before Judge Burress.

63. Those actions consisted mostly of administrative appeals.

64. Judge Burress and Judge Collette were and are close socially and politically.

65. In conjunction with Ingham County circuit court Judge Peter Houk, Judge Collette instituted a filing restriction against Plaintiff that amounted essentially to banning Plaintiff from Michigan courts.

66. Acting jointly and individually by design, scheme and plot, Judges Collette and Houk implemented the Michigan court ban in bad faith in connection with a cover-up to protect Judge Burress from exposure of wrong doing.

67. In furtherance of that cover-up Defendants Burress and another wrongful _____ _____ _____ proceeded _____ dismissal of state court litigation brought by Plaintiff.

68. The actions of Defendants Evans and Wexler _____ _____ to the filing of federal court litigation. Scott v Evans, et al, United States District Court, Eastern District of Michigan.

-14-

69. As a further consequence of Plaintiff's inquiry to Judge Burress about his knowledge of the Chicago attorney, Plaintiff became subject of mistreatment by the prison.

70. Such treatment included harassment shakedowns, unlawful property seizures, excessive prison transfers and the issuance against Plaintiff of false misconduct reports; all of which once it began continued relentlessly until plaintiff's release from prison.

71. Such treatment led to further filing of federal court litigation along with a number of institutional grievances.

72. Orchestrated by Judge Burress, SCAO unlawfully assigned Circuit Court Judge Allen Garbrecht to hear Plaintiff's motion to withdraw plea, resulting in further filing of federal court litigation, Scott v. Hall, et al, United States District Court, Western District of Michigan, file No. 4:93-CV-40.

73. By order of the Michigan Court of Appeals issued on or about March 1, 1992, Plaintiff was remanded for resentencing before a different judge.

-15-

74. Orchestrated by Judge Burress, SCAO assigned Ingham County Circuit Court Judge Carolyn Stell (retired, to resentence Plaintiff who had reputation for harsh sentencing practices.

75. Constituting a substantial upward departure from the sentencing guideline recommendation, and lacking any evidentiary support, Judge Stell ~~~~ Plaintiff's sentence upon resentencing ~~~~ of eight to twenty ~~~~

76. On or about June 7, 1992, Plaintiff's brother, Kenneth Scott, was struck and killed by a drunk driver.

77. Plaintiff's brother ~~~~ bequeathed his estate in its entirety to the Plaintiff.

78. ~~~~ direction of Judge Burress, and ~~~~ Scott Senior, Scott Junior ~~~~ removed, converted ~~~~ denied Plaintiff the assets of his brother's estate.

79. Defendants Scott Senior and Scott Junior's stated reason for depriving Plaintiff assets from his brother's estate

was to deny Plaintiff financial means to obtain legal assistance in his criminal case.

80. Plaintiff entrusted the care of his home pending his release from prison to Defendants Tim and Judge Blackburn.

81. Under direction of Judge Burress and Defendant Lovan, and once again to deny Plaintiff financial means to obtain legal assistance in his criminal case, Defendants sold Plaintiff's home without paying Plaintiff proceeds due and owing him from that sale.

82. In a prisoner civil rights lawsuit filed by Plaintiff in the United States District Court for the Western District of Michigan, Plaintiff, on or about January 5, 2005, Subpoenaed Judge Burress for the taking of his deposition. Scott v Bair, docket No. 1:95-cv-571.

83. Meanwhile, on or about July 11, 2005, Plaintiff was granted a parole and scheduled to be released from prison on August 16, 2005.

84. Based on a letter falsely accusing Plaintiff of intending to murder Judge Burress and Defendant Lovan sent

-17-

to the parole board by Burress, Laver and
Cremonte, Plaintiff's parole was revoked
August 15, 2005.

85.  Defendants knew such
accusations to be false and same were
made maliciously and purposefully,
with the specific intent to wrongfully
cause the revocation of Plaintiff's
parole in retaliation for Plaintiff
subpoenaing Judge Burress.

86.  Plaintiff submits that
such actions was taken once again
to frame him.

87.  Plaintiff was eventually
released from prison on or about July
11, 2006.

88.  Seeking damages in
connection with revocation of parole
actually and naming as party Defendant
Judge Burress, Rico Laver, Thomas Cremonte
and various members of the Michigan
police and correctional system, Plaintiff
filed a civil rights lawsuit in the Eastern
District of Michigan on or about
September 1, 2006.  Scott v Burress, et al
File No. 06-13916.

89.  In another matter seeking

-18-

to recover a letter written to Plaintiff
by a deceased friend and confiscated
by Defendant Pasenski, Plaintiff filed
an action in the Livingston County District
Court on or about November 5, 2007.
Scottie Pasenski, File No. 07-4270-GC.

90. In reaction to Plaintiff's
lawsuit against Defendant Pasenski,
Pasenski joined forces with Judge
Burress and Defendant Lavan against
the Plaintiff.

91. New charges in Livingston
County were brought against Plaintiff
on December 11, 2007.

92. Plaintiff was charged on
that date with possession of controlled
substance less than 25 grams with
intent to deliver and operating a
motor vehicle with presence of controlled
substance.

93. The charges were and
are false and were orchestrated
by Defendants Burress, Lavan and
Pasenski once again to frame the
Plaintiff.

94. Plaintiff's bond for the
new charges was set by Magistrate Brown

-19-

at $200,000.00

95. Bond was based on the same false accusations in the letter sent to the parole board.

96. Magistrate Brennan, Judge Burress and Brian Laxen are close friends.

97. Unable to make bail, Plaintiff remains incarcerated at the Livingston County Jail.

98. Except for interference by Judge Burress, Plaintiff's criminal case would have been heard by Livingston County Circuit Court Judge Stanley Latreille.

99. Judge Latreille is fair and impartial and has no ties to Judge Burress or Defendant Laxen.

100. Just before Plaintiff's 12/11/07 arrest, Judge Burress, in bad faith, met with and conveyed to Judge Latreille the fake accusations that Plaintiff intended to murder him.

101. In so doing, Judge Burress purposefully created an automatic ground for the disqualification of Judge Latreille leaving Judge Latreille

-20-

no choice but to recuse himself.

102. Judge Burress's contact with Judge Latreille was in fact an act of sobatage to get Judge Latreille out of the picture.

103. As intended by Judge Burress, the disqualification of Judge Latreille set off a chain reaction of disqualifications eventually leading to a SCAO assignment of a Judge who Judge Burress has influence over.

104. SCAO assigned Ingham County Circuit Court Judge Joyce Draganchuk who once again has reputation for harsh sentencing practices.

105. The SCAO assignment of Judge Draganchuk is part of a pattern of Ingham county circuit court judges with reputations for harsh sentencing practices being assigned under orchestration by Judge Burress to hear livingston county cases brought against Plantiff.

106. Defendant Hughes confirmed that Judge Draganchuk was not chosen by a blind draw therefore further confirming her assignment to reflect be product of judge shopping.

107. The SCAO assignment of Judge Draganchuk to Plaintiff's case was instantaneous to Judge Collette's recusal from the case who had also been assigned by SCAO.

108. Judge Collette indoctrinated Judge Draganchuk into the Vendetta against Plaintiff by Judge Burress

109. Judge Draganchuk is predisposed to carrying out that Vendetta.

110. Judge Draganchuk described her predisposition towards Plaintiff stating "Scott has a lot of nerve suing a judge and will have a long time in prison to think about it."

111. That by those words so spoken, Judge Draganchuk meant and was taken to mean that she is motivated to imprisoning Plaintiff in retaliation for suing Judge Burress

112. Revealing her knowledge of Judge Burress's role in the criminal operation against Plaintiff that led to the current charges, Judge Draganchuk stated "Judge Burress

-22-

appears to have done a good job
setting Scott up."

113. To conceal Judge Burress's
attempt to the criminal operation
the subornation to the current charges against
Plaintiff. Judge Draganchuk, in an
act of protectionism in furtherance of
the cover-up relating to Judge Burress,
proclaimed her intent to block
Plaintiff from calling Judge Burress as
a witness at Plaintiff's trial.

114. Defendant did not know Plaintiff
longer in her conduction before Judge Draganchuk.

115. Defendant Maas objected
to a reduction in bond on her accusation
of Plaintiff posing a danger to Judge
Burress and John Jenkinson.

116. Defendant Maas knew such
accusations to be false and same were
made maliciously and purposefully with
the specific intent to wrongfully
deny Plaintiff a reasonable bond.

117. However, Judge Draganchuk
falsely denied a connection between
Plaintiff's bond and Judge Burress and
Defendant Lovan.

118. Instead, Judge Draganchuk

-23-

denied Plaintiff bond on conjured-up
grounds raised for the first time
by Judge Draganchuk that Plaintiff
posed a risk of failing to appear
for future proceedings.

119. Among other things,
Judge Draganchuk refused to take into
account that if convicted Plaintiff's
sentencing guidelines would be 12-17
months that, because of having failed
to make bail, Plaintiff has already
completely served.

120. For purposes of setting
bond, the refusal to take into account
the fact that Plaintiff has already
served the high end of the
sentencing guidelines recommendation,
serves only to further confirm
Judge Draganchuk's predisposition to
upwardly departing from the
sentencing guidelines should Plaintiff
be convicted.

121. Judge Draganchuk falsely
denied a connection between Plaintiff's
bond and Judge Burress and Defendant
Levan to avoid an evidentiary hearing so as to

-24-

protect Judge Burress from being
called by Plaintiff as a witness.

122. Plaintiff's district court
proceedings were heard by Livingston
County district court Judge Teresa
Brennan.

123. On her own admission Judge
Brennan is close friends with both
Judge Burress and Defendant Leverbut
refused to recuse herself.

124. Judge Brennan treated
Plaintiff in a bias and unlawful
manner.

125. After acknowledging
on record that Plaintiff is not
dangerous, Judge Brennan's treatment
of Plaintiff included requiring a
excessive uniformed police
presence during jury selection and
Plaintiff's jury trial to prejudice
Plaintiff before the jury.

126. The assignment of Judge
Brennan to Plaintiff's case was also
product of judge shopping.

127. It was accomplished by
an act of manipulation on the part of
Defendant McCririe.

25.

128. To circumvent the blind draw Defendant McCririe temporarly assigned himself to Plaintiff's cases to ensure that the cases were assigned to Judge Burress opposed to the other district court judge who is the Defendant's wife.

129. Judge Brennan appointed Defendant Gates-man to represent Plaintiff who on his own admission is also close friends with Judge Burress and Brian Loven.

130. Judge Brennan refused to substitute counsel leaving Plaintiff no choice but to represent himself.

131. On the basis that the accusations of Plaintiff intending to harm Judge Burress and Defendant Loven were false, Plaintiff also sought a bond reduction before Judge Brennan.

132. Similarly, the same as Judge Dragenchuk, Judge Brennan also falsely denied a connection between Plaintiff's bond and Judge Burress and Defendant Loven while conjuring-up other grounds to deny bond.

133. While Plaintiff has been at the Livingston county jail, at least three further attempts to frame him were made as follows:

a) On or about December 11, 2007, Defendants Cremonte and Carriveau attempted to coerce Randy Guillor, a Livingston county jail inmate, into falsely claiming that Plaintiff tried to get him to kill Judge Burress.

b) Under direction of Defendants Cremonte and Dolling, Nicholas Sinnette, another Livingston county jail inmate, tried to set up Plaintiff on false charges of Plaintiff trying to get him (Sinnette) to kill Judge Burress.

c) While representing Plaintiff Defendant Gatesman covertly assisted Jeff Spann, another Livingston county jail inmate, in negotiations with the Livingston county prosecutor's office involving an effort by Spann to set up Plaintiff and Plaintiff's girl friend on false charges of smuggling drugs into the jail.

134. While at the Livingston county jail, Defendant Cremonte conveyed to

Plaintiff the following facts:

a) Plaintiff was falsely set up 12/11/07 because of his lawsuits against Judge Burress, Defendant Lovan, Defendant Pasinski and Defendant Cremante.

b) With the exception of Plaintiff, charges in cases involving prescription pills are brought only after the substance in question has been analyzed which according to Cremante normally takes two or three months.

c) Judge Burress and Defendant Cremante arranged to have Michigan State Police (MSP) Forensic Lab falsely incriminate Plaintiff on the operating with presence of controlled substance charge.

d) That Judge Burress purposefully created the automatic grounds for the disqualification of Judge Latreille.

e) That SCAO assigned Judge Oragachuk to Plaintiff's criminal case at the direction of Judge Burress and Judge Collette and was selected because of her harsh sentencing practices.

f) That Plaintiff is classified at the jail to maximum security and is restrained in belts, chains and leg shackles because of his lawsuits.

135. To impede Plaintiff in defending himself, the jail, under Defendant Cremonte, refuses Plaintiff access to a secure telephone, legal research material and an adequate means to prepare and submit papers to the court.

136 Being restrained in belts, chains and leg shackles during court proceedings further impedes Plaintiff's legal access by preventing him from handling his legal papers, taking notes and performing other functions necessary to meaningfully participating in the proceedings.

137. Plaintiff's Livingston County legal proceedings are completely rigged and controlled by Judge Burress.

138. Plaintiff was falsely set up, is being denied bail and treated as otherwise described above in retaliation for seeking legal redress.

-29-

## CAUSE OF ACTION
### RICCO

139. Plaintiff incorporates by reference paragraphs 1 through 138 above.

140. The actions of Defendants set forth above are illegal and pattern of racketeering activity.

141. Defendants, acting jointly and individually, conspired with each other on a single plan to injure Plaintiff in his person, property and business through a continued pattern of behavior involving repeated acts of concocting fictitious legal complaints and charges, framing Plaintiff, fraud, extortion, maintaining a protection racket, judge shopping and other acts of obstruction of justice.

142. Defendants agreed with each other upon a continuing plan to injure Plaintiff through racketeering activity in retaliation for Plaintiff seeking legal redress.

143. The predicate acts as described above have the same or similar purposes, results, participants, victims, methods of commission and otherwise are

-30-

interrelated by distinguishing characteristics
and are not isolated events.

144. As a result of the
Defendants racketeering activity, Plaintiff
suffered damages including loss of
property, business and liberty, along with
fear, anxiety and interference with the
exercise of protected rights.

Relief Requested

WHEREFORE, Plaintiff requests this
court for an order granting

A) Judgment for compensatory
and punitive damages against Burress, Laven,
Posenski, Cremonte, Bolling, Bergsma,
Carriveau, Frank Delura, Angela Delura,
Walters, Evans, Hughes, Maas, Gatesman,
Parole Board members, S. Scott, V. Scott
senior, V. Scott Junior, Lakeras, McBrair,
T. Blackburn, J. Blackburn, Root 3, Smith
and B. Scott jointly and severely in what
ever amount Plaintiff is entitled in excess
of $75,000.00 excluding costs and interest.

b) Injunction restraining
Defendants, their agents, servants and all
others acting in concert with them
from racketeering and related activity
including concocting fictitious complaints

-71.-

against Plantiff, Judge Shopping and other
acts of abstruction of justice and all
consequences of such acts.

Respectfully Submitted

X _____

David J. Scott
Plantiff In Pro Per
Livingston County Jail
150 S. Highlander way
Howell, MI 48843

Dated: March 9, 2009

DECLARATION OF DAVID J. SCOTT

By my signature below, I David J.
Scott, declare under penalty of perjury that
I have read the foregoing complaint and
that the facts set forth therein are
true to the best of my personal knowledge
and if sworn as a witness can
competently testify to same.

X _____

David J. Scott

Dated: March 9, 2009

-32-

**CIVIL COVER SHEET**    County in which action arose ___Livingston___

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Livingston    David Scott | Daniel Burress |

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | | ☐ 865 RSI (405(g)) | |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 462 Naturalization Application | | |
| **470** | ☐ 440 Other Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | | |
| | ☐ 510 Motions to Vacate Sentence | | | |
| | **Habeas Corpus:** | | | |
| | ☐ 530 General | | | |
| | ☐ 535 Death Penalty | | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 USC  1961-1968
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE  Arthur Tarnow   DOCKET NUMBER  06-13916 / 09-10916

DATE _____

SIGNATURE OF ATTORNEY OF RECORD  Daniel Scott KRH

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

SUANT TO LOCAL RULE 83.11

Is this a case that has been previously dismissed?

☐ Yes
☐ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☐ Yes
☐ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :

## CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 09-11807 | Judge: PAUL D. BORMAN | Magistrate Judge: MONA K. MAJZOUB |

| Name of 1st Listed Plaintiff/Petitioner: | Name of 1st Listed Defendant/Respondent: |
|---|---|
| DAVID J. SCOTT | Daniel Burress et al |

| Inmate Number: 9115 | Additional Information: |
|---|---|
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:**<br><br>Livingston County Jail<br>160 Highlander Way<br>Howell, MI 48843 | |

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. Is this a case that has been previously dismissed?
   - ☐ Yes   ☒ No
   - ➤ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)
   - ☐ Yes   ☒ No
   - ➤ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____